Good morning. We're back on the record and we have one matter where both parties are appearing remotely and on that matter each side has 10 minutes and if you are the appellant that 10 minutes includes any time you wish to reserve for rebuttal and we're calling Tony D. Hornsby versus Frank Bisignano, case number 245422. All right we're ready to hear from the appellant. Thank you. May it please the court. My name is Eitan Casteljanic and I'm representing Tony Hornsby in this appeal. I would like to reserve three minutes of my time for rebuttal. Mr. Hornsby has been unable to work successfully for a long time. He was in the military until 1988 when he had a basically a break, a mental health break that resulted in being discharged from the military. Over the course of the next 14-15 years he went to school, he tried to work, he had limited success, kind of you lose a lot of jobs but he kept trying. By 2020, 24th case goes back so far. So by 2004 he was no longer able to hold down work and he had applied for disability benefits from the VA and was granted them. He was found to be 100% disabled from his mental health impairments. And he, they found him that he, although he'd applied, he was found disabled by them in December of 2004 but he actually, they found that his actual disability went back to July of 2004. He's not had any substantial gainful activity since then. His earnings record shows no earnings. There are references in the file to various, his attempts to be a defense contractor but he's, the nature of his mental health impairments has, as is discussed in his mental health evaluations, it does result in him saying things that aren't always. Mr. Yannich, let me go back. You and I have, we've had arguments before previously and I think I've, I've mentioned to you that just summarizing the evidence without really doing any analysis isn't that helpful. And it seems like the district court explained that you spent several pages of your brief below simply summarizing parts of the record before asserting the evidence is essentially uncontradicted and the ALJ erred. Much of your brief before us does the same thing. Doesn't this, without more, simply invite us to review the same evidence that the ALJ reviewed and second-guess the ALJ's factual findings? Okay, so first of all, you always make, you always make us do so much work, okay? Your Honor, in this case there are only three medical opinions and roughly in the, the time frame we're looking at here is from 2004 to 2009, December 2009. If we don't, that's when he has to establish disability. During that time period, there are three psychological evaluations. One is in 2010, actually, but it's not too long after 2009. Those three psychological evaluations, all three evaluators concluded that he was disabled. That is the evidence of record that supports his claim. In addition to that, I discussed in the, what, I discussed one of those evaluations. Two of them had clear opinions about his functional limitations. The third one just basically said he's got so many problems he can't work, but there were many findings in that report that support the other two evaluations. The three evaluations are all consistent. That's the record. That's the evidence. It's not, it's not, the record isn't limited to that. Oh, it's not. The time period that we're looking at, it is. And so the judge, as far as... One of the problems we have, so one of the problems we have is that the judge, the ALJ, didn't consider some opinions because they're outside of the, of that period that we're talking about, I think 2004 to 2009, and did consider other opinions that were outside the period. There's an inconsistency there. I'm concerned about that. Do you think I misread that record? Well, when he was evaluating the medical opinions, a section of his opinion, where his decision, when he evaluates medical opinions, he discusses Dr. Schoenberg's opinion, Dr. Price's opinion. Those are the only two that he discusses. And Dr. Price was in the relevant time period. Dr. Schoenberg was only four months or five months later, I believe, and his opinion, I think, relates back because it's consistent with Dr. Price's opinion from the relevant period. Dr. Tyler is the third psychologist, and hers was in the early end of the period. We're not communicating. I don't think we're communicating. I hear you. I hear you. You're saying that he rejected some evidence outside the period and accepted other evidence, but he didn't really technically accept other medical opinions outside the period because he basically said, he even looked at the state agency's opinions, and he said, well, no, they're not even opinions. They had no opinions, so those don't count. So when I look at what opinions there are in the record that relate to the relevant period, I see these three opinions, all three of which support a finding of disability. I don't see any medical evidence from, you know, the relevant time period that doesn't. There were providers that your client saw outside the relevant period, correct? They weren't providers of psychiatric or psychological care, but your client did see providers outside the relevant period, correct? Yes, he did. And the IJ relied on statements made to those providers or perhaps even conclusions made by those providers, correct? Yes. Yeah, your client made many statements to physical health treatment providers over the years, yet appears to have never made complaints about schizophrenia, depression, and other psychiatric symptoms. Why is that not sufficient for the ALJ to reject your client's testimony as inconsistent with objective medical evidence? My client is very, very doctrophobic. He was removed from the military based on a medical diagnosis, which he never accepted, and to this day, he knows that's his label, and he's evaluated and concluded that he had these diagnoses, but part of his diagnosis is he does not, he will not go to mental health providers. He will not take the medications he had taken. He prescribed medications while he was psychiatrically hospitalized. He refuses to take those, and so he lives an isolated life. That's how he has coped with his impairments. A salient point in response to, and this is really for both counsel, to just kind of boil it down. I appreciate that he lives alone. We don't have a spouse or a friend, or we just do just the one telephonic friend, as we would, as we often have to describe how this person interacts. So we have a really limited record, and this individual, to go to Judge Callahan's point, from day one he has showed very poor insight into his condition. He's denied several times having any psychological condition, even though we know he was hospitalized for several months, and he has a very heavy-duty diagnosis of a schizo, different variations of the umbrella diagnosis. So it's really tough, and of course it is your client's burden. I don't put a lot of stock in the fact that this individual has denied the diagnosis or not made complaints, because that's been true from day one, including at the time he was declared by the military to be 100% disabled because he has schizophrenia. But I think what Judge, well all three of my colleagues have mentioned, is there is other evidence in the record. It's just sporadic, right? It's what he happened to tell a dentist, or it's what he happened to tell somebody when he went in to see a different type of a care provider for a different condition. And it does, I just want to be clear, you're not suggesting that we shouldn't consider, or the ALJ couldn't consider that evidence, are you? No, no. Other evidence is always relevant. It's challenging here when you've got this period from 2004 to 2009, that's the, he has to prove disability during that time frame. So you, generally speaking, you want to be able to grab evidence that's from that time frame, and there is three psychological evaluations that are close enough in there. I mean the evidence, for example, 1988, 1990, it's very, that's why he was removed from the military, is very important. It's in the file, it's important evidence of the history, and then he worked after that on and off, and he had trouble with it, and then he hasn't since. So yes, can you consider it? Yes. The problem, I guess, is that the judge, from my perspective, is that the judge rejected the three psychological opinions that are from the relevant time period, and he didn't point to any contradictory evidence from that time period, and certainly not any evaluations, because there weren't any. Every person who's evaluated him has come to the same conclusion. I'm sort of shocked here that you're requesting we remand for an award of benefits when it was your burden to prove this in the first place. So if you are lucky enough to get a remand to get benefits, you know, but even if we were to credit as true all the evidence the ALJ rejected, don't we still need to have further findings from the ALJ regarding how the evidence weighs against the other evidence in the record? I find it, I find it very surprising that when, if you were fortunate enough to get a remand, that you would think that it would be for an award of benefits, when it really, there have to be other developments in the record. I can't strongly disagree with you on that. I put that in there because if you don't... You shouldn't put things in if you can't disagree, you know, if it, well, that's, you know, we take it at face value. You should only make arguments that you think you can prove, and... Well, Your Honor... I know I'm being a little hard on you, but it's, but you're hard on me by not doing a better brief. Your Honor, if the court accepts the three psychological opinions from that time period, those opinions all support a finding of disability. However, there is other evidence that, yeah, the court might see, and it's often true that it would be nice if an ALJ actually fairly weighed all this stuff, and the ALJ's reasons, my point is, when the ALJ gives reasons that aren't any good, the court does have within its discretion the ability to credit the rejected evidence and award benefits, but it's within the discretion of the court, and if in the discretion of the court you believe that that is not appropriate relief here, then I can't argue with it. It's within your discretion, but I believe that there is no evidence here to support... Substantial evidence doesn't even, does not support the ALJ's reasons. All right, we've taken you over time. Unless my colleagues have further questions, we'll move to hear from the government, and I'll give you one minute for rebuttal. Thank you. Do you have any further questions? No, I don't. Okay, we'll hear from the government. Good morning, Your Honors. May it please the court. Lindsey Payne on behalf of the Commissioner of Social Security. The record as a whole here shows that throughout the time period from 2004 through 2009 when claimant asserts he was disabled due to his mental impairments, that as the court discussed, he was not engaged in mental health treatment, but the important part is that while not engaged in mental health treatment, his treatment notes showed consistently that he was behaving normally, without complaints, and able to carry on normal activities of daily living. But he doesn't, on face value, his statements regarding his employment history, education level, travel, and more each, they seem false on their face, and they're not verified anywhere in the records. So why would it be reasonable for the ALJ to have taken them at face value? I mean, it's sort of like at what point, I mean, he almost like says he's Superman, you know, I mean he's doing international travel, he went to law school, he did this, he did that, and it doesn't seem to be at all true. Two points on that. One, both Dr. Price and Dr. Schomburg, who were Veterans Affairs psychologists who evaluated claimant, found that he was not delusional. He was not what? I'm sorry. That he was not delusional. So he might be prone to grandiosity, but they found that he did not actually believe untrue things to be happening. Second, I would disagree that, as a whole, all of these statements on their face are false. So the travel, for example, comes into play because claimant went to a Veterans Affairs hospital seeking vaccinations that would be needed for certain international travel. And by all accounts, we're not sure how, but he was financially supporting himself with the aid of his VA benefits throughout this time to the extent that he was a homeowner. Going to receive vaccinations for international travel is the type of organized logistical activity that, on its face, doesn't necessarily seem to be false. Counsel, he said that he went to, I've looked really hard for any indication that he actually did this international travel, and I think he says something about going to 20 countries. We can't see anything other than that he showed up to get some vaccinations. I mean, he also reported that he was a military, a defense contractor, and the Social Security, the ALJ, you know, acknowledged that there is really no indication in the record, and of course, Social Security have access to his earnings records, that that ever happened, right? The same thing is true of law school. My concern in this case is that it's very typical for a claim to be denied because someone's testimony is not consistent with what they're capable of actually doing, right? And in this case, we don't have any other folks around him, really, to be very persuasive about what he was capable of actually doing. We have his own self-reports. We know that his care providers, who are psychologists, psychiatrists, consistently said that he engages in grandiosity and has very poor insight, but the ALJ here cited these particular inconsistencies. I think there's three of them that should have been objectively verifiable. Whether he went to law school or has his graduate degree, which should be objectively verifiable, and the same is true of whether he served as a defense contractor and whether he engaged in this international travel, there is a duty to develop the record. So by relying on those particular facts to discredit his testimony, it struck me as not enough. What's your best response to that? A couple points. So just to clarify, some of those allegations were that those were things he wanted to do. There was one reference to being a defense contractor, which the ALJ recited in the decision but didn't necessarily use on its own to discredit his testimony. The law school was a statement that he wanted to go to law school. He made similar statements about wanting to serve in the FBI, for example. He also stated that he has a graduate degree. He stated he has a graduate degree. Another place he said it took forever to get the AA degree, but also said he has a graduate degree. Which is unbalanced against the fact that he is making a lot of inconsistent statements, but more importantly, what we do have is the record evidence that your honors pointed to from his treatment records that he's actually engaging in really organized behavior by staying on top of his physical treatment and he's behaving normally and interacting normally with these providers. They're not relying on his statements that everything is okay. They're observing him, including obviously this is not a psychologist or a psychiatrist, but there's a lot of dental records. We've all been to the dentist. You're having procedures. You're there for a fair amount of time and he's behaving really normally. That's consistent with what we see in these types of cases with mental illness where the patient will wax and wane and we have some some snippets, some occasions in the record where he seems to be acting normally, at least to the extent that he can get himself to a dentist appointment or get himself to some of these other care providers on occasion. The other part of the record seems to be that he's washed out of 30 different jobs. He's not capable of sustaining employment. It seems to me to be just a very difficult record to say that I've got any confidence in that. That's where one, as your honors noted, the burden comes in. That it was Klayman's burden to establish his limitations, but also really important here that ALJ did not find that Klayman is not mentally impaired. That ALJ found that he did have a significant mental disorder and assessed limitations and if we look at the specifics of the psychological evaluations that he did have through the Veterans Affairs, their opinions, one, there's the opinion of whether he's disabled under Veterans Affairs standards, which is irrelevant to whether he is disabled under SSAC. It's not irrelevant. It's not determinative. It's certainly relevant evidence. It's not determinative. The rating is not something the ALJ needs to articulate consideration of. Certainly the ALJ needs to consider their assessments of him and that's highly relevant, but if we look at the details, they're not wildly out of step with the residual functional capacity assessed here. Dr. Price found seems to have difficulty comprehending directions, may have difficulty following the requirements of day-to-day performance, and has demonstrated limited resourcefulness in dealing with problems, but she also specifically found at page 392 of the record that Klayman was not totally occupationally impaired. You mentioned Dr. Price and I want to ask you a question about the ALJ's treatment of the reports of Dr. Schomburg, I guess, and Dr. Price. In part, the ALJ said, I'm discounting them because the examinations occurred outside the relevant claim disability period, but the ALJ also relied on reports by providers who were not psychiatric or psychological providers who also saw the claimant outside the relevant period. So I'm trying to figure out why you can reject some because they're outside the relevant period, but credit others, and there may be a good reason, but the ALJ never explained why. Can you address that? Sure, and let me clarify. So as Mr. Janich stated, there were three Veterans Affairs evaluations, the first being Dr. Tyler. I don't think there's any dispute that what Dr. Tyler issued in his report is not a medical opinion. The ALJ considered Dr. Tyler's findings, but there was no opinion to consider. Then we have Dr. Price. Dr. Price issued her assessment during the relevant time period. The ALJ did not discount it based on when it was issued. Then we have Dr. Schomburg. Dr. Schomburg's report is from five months after the period under review. The ALJ did consider that it's from outside of the period under review and did not claim to be retrospective, but that certainly wasn't the only reason that the ALJ gave. It would be one thing if the ALJ said, I'm not going to consider Dr. Schomburg's opinion because it's from after the period under review. That's not what he said. He said it was a one-time examination without access to a full longitudinal record. It occurred after the expiration of the insured status. It wasn't supported by his own examination findings, including that Dr. Schomburg specifically found that he was not delusional and was not hallucinating, and also that it was based in part on reports from claimant that weren't consistent with the rest of the record. The ALJ also found it wasn't consistent with the lack of mental health treatment and with the denial of mental health symptoms. Then the ALJ is otherwise generally considering treatment records that are from within the relevant time period as far as observations about his behavior. The ALJ did credit statements made to providers outside the relevant claim period, correct? Yes, and also did consider, for example, the travel I believe was after. The ALJ also credited medical opinions by people who only saw Hornsby once, correct? Non-psychiatric providers who only saw him once. In other words, one of the criticisms of Schomburg was that he only saw him once. There were other people who only saw him once, and the ALJ nonetheless relied on their impressions, correct? Yes, I agree. Relied in part on their impressions or observations, but I would differentiate between those statements and medical opinions, which have a very specific definition under Social Security regulations, meaning what the claimant can still do despite his impairment. One final question. What medical opinion, I understand it's the claimant to prove his case, but what medical opinion do you believe supports the ALJ's denial of benefits? Ultimately, I am certainly bound by the ALJ's own statement that he didn't credit any... That's not the question I asked. I asked if you had a point to a medical, let me ask it differently so we don't have any confusion. If you had a point to a medical opinion that said that the claimant was not disabled during the relevant period, could you point to one? Normally, there's an in-house opinion by someone who's examined the claimant and said, you know, I don't think he's disabled. I don't see that in this case, and that's why I'm asking. Yes, and despite the fact that the ALJ found the two VA opinions not persuasive, I would point to Dr. Price's statement that claimant is not totally occupationally impaired. That's at page 392 of the record, and I would also point to Dr. Schomburg's statement at page 1108 of the record, which states the best description of claimant's current psychiatric impairment is psychiatric symptoms cause occupational and social impairment with occasional decrease in work efficiency and intermittent inability to perform occupational tasks, although generally the person is functioning satisfactorily with routine behavior, self-care, and normal conversation. So while... Did that take into consideration that he had been fired from 30 jobs? That took into consideration, yes, Dr. Schomburg received claimant's allegations, and which is borne out by the record that certainly he has had lapses in employment, but one point on that, there's no evidence that claimant has tried unskilled work of the type that the ALJ relied on here. He had, for example, been working as an assistant superintendent in the construction industry where he was inspecting the work of skilled trades people. So... We've taken... Go ahead. No, forgive me. We've taken you way over your time, so that'll... Well, unless my colleagues want to ask additional... Which you're free to. Yeah, I'm fine. Okay, there are no additional questions. Just one minute for rebuttal, Mr. Yannich. Thank you. Thank you. First of all, I want to just point to the... One of... Some of the best evidence in this file is the evidence from Ruth Martin, even though much of her contact with Hornsby was over the phone. She has a longitudinal description of symptoms that is consistent with the psychologist's opinions. Second, I wanted to just point to all the travel evidence is all from 2015 to 2019, and it is. It's contradictory. I have... It's... It is what it is, as much of his testimony is. Well, wouldn't that be part of your burden, too? You should have probably presented that he didn't make any of those travels? If it's your burden. Well, first of all, let's... Even assuming... I mean, it's sort of hard to prove a negative. So, to prove that... Even if we... Even assuming that he made some of those travels, they were between 2015 and 2019, and I don't know that I can get how I would get proof of him crossing borders, for example. Some of the... There's this fantastic, fantastic kind of description of activities that just doesn't... It just doesn't add up, and that was something that, once again, was pointed out by every psychologist who we talked to. The only final thing I wanted to mention is just the fact that he's... Could get to the dentist and could interact with them. And actually, the quote that my opposing counsel mentioned from Dr. Schoenberg's report is very... It is important. His psychiatric symptoms cause occupational and social impairment with occasional decrease in work efficiency, intermittent inability to perform tasks. And those kind of limitations were not accepted by the ALJ or included in his residual functional capacity. And those are the kind of limitations that would cause you to lose jobs. All right. Thank you for both for your argument. This matter will stand submitted. Court is in recess until tomorrow. All rise. The court stands in recess until tomorrow morning at 9.
judges: CALLAHAN, CHRISTEN, HURWITZ